IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| A.M.,[1] § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 4:23-CV-1091-BR |
| § | |
| MARTIN O'MALLEY, § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION,[2] § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff A.M. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's applications for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("SSA") for lack of disability. (ECF 10; ECF 9-1 at 23-37). The parties voluntarily consented to have the undersigned conduct all proceedings in this case to disposition in accordance with the provisions of 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73. (ECF 5). After considering the pleadings, briefs, and administrative record, the Court AFFIRMS the Commissioner's decision.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is "automatically substituted" for Kilolo Kijakazi as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I. BACKGROUND

Plaintiff filed a claim for Title II disability and disability insurance benefits on May 5, 2021, alleging disability due to a self-inflicted gunshot wound to the hand, diabetes, back pain, sleep apnea, and clubfoot. (ECF 9-1 at 60) ("The individual filed for initial claim for disability on 05/05/2021 due to the following illnesses, injuries, or conditions: Hand/Wrist/Arm Problem, Diabetes, Sleep Apnea, Back Problem, Club Foot."). Plaintiff was born on March 17, 1981, was 39 years old at the time he filed his claim, and has at least a high school education. (*Id.* at 35).

Plaintiff's application was initially denied on November 8, 2021, and was denied again upon reconsideration on August 2, 2022. (*Id.* at 60-85). Plaintiff requested a hearing, which was held before the Administrative Law Judge ("ALJ") on March 8, 2023. (*Id.* at 43-59). The ALJ issued an unfavorable decision on May 1, 2023, finding Plaintiff not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 23-37).

At step one of the five-step sequential evaluation,[3] the ALJ found that the claimant had not engaged in substantial gainful activity since February 11, 2021, the alleged onset date. (ECF 9-1 at 28). At step two, the ALJ found that Plaintiff has several "severe impairments:" dysfunction major joints, disorders of the spine, and diabetes. (*Id.*). At step three, however, the ALJ found that Plaintiff's impairments—or combination of impairments—did not meet or medically equal the

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 f.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 f.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

severity of any listed impairment in the social security regulations. (*Id.* at 29). At step four, the ALJ determined that Plaintiff has the RFC to perform light work with some limitations, such as working as a ticket taker, parking lot cashier, or agricultural sorter—jobs that exist in significant numbers in the national economy. (*Id.* at 35-36). The ALJ determined that, given "the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work," and is therefore not disabled withing the meaning of the Social Security Act. (*Id.* at 36).

The Appeals Council denied Plaintiff's request for review on September 6, 2023. (ECF 9-1 at 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support

3

the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III.   DISCUSSION

In his Complaint, Plaintiff requests that this Court find that he is entitled to social security disability benefits and supplemental security income or remand this case for further hearing. (ECF

1 at 2). In his Opening Brief, Plaintiff asserts three grounds for reversal and remand: 1) the ALJ erred in failing to consider Plaintiff's chronic pain syndrome as a medically determinable impairment; 2) the ALJ erred by finding the opinion of Jonathan Koning, M.D., unpersuasive, because he did not properly articulate the level of supportability and consistency with the record as directed by 20 C.F.R. § 404.1520c; and 3) the ALJ erred by improperly relying on the testimony of the vocational expert to find the Plaintiff capable of certain jobs at step five. (ECF 10 at 8). The Court will address each in turn.

### A. Even if the ALJ erred in failing to determine that Plaintiff's chronic pain syndrome is a medically determinable impairment, the error is harmless.

First, Plaintiff asserts that the ALJ erred "by failing to consider the Plaintiff's chronic pain syndrome to be a severe impairment," and "failed to consider it as a medically determinable impairment at all." (ECF 10 at 8). Although the ALJ recognized several of Plaintiff's health conditions—dysfunction major joints, disorders of the spine, and diabetes—as severe impairments, he did not discuss chronic pain syndrome, and did not find that it was a medically determinable impairment. (*See* ECF 9-1 at 26-37). Plaintiff argues that had the ALJ recognized and considered chronic pain syndrome in combination with his other impairments, his entire determination could have been different. (ECF 10 at 10).

Even if Plaintiff is correct that the ALJ erred by failing to consider the Plaintiff's chronic pain syndrome to be a severe impairment, this does not end the analysis. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "[I]f the ALJ proceeds past step two, we consider whether the error was harmless. . . . Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id.* The burden of showing that an error is harmful typically falls on the Plaintiff. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Although the ALJ did not consider chronic pain syndrome by that name, he did address and

5

consider the pain Plaintiff suffers as a result of his severe impairments. (ECF 9-1 at 28-37) ("I have considered all symptoms"; "[Plaintiff] also had some difficulty… due to low back pain"). The ALJ also accounted for Plaintiff's chronic pain in enumerating factors that may limit Plaintiff's ability to work; the ALJ noted that Leigh McCary, M.D., completed a *Physical Residual Functional Capacity Assessment*, and that this opinion was "persuasive, as to the claimant's ability to perform light exertional work." (ECF 9-1 at 32). Dr. McCary's Assessment specifically states that Plaintiff is "unable to stand for long or sit for long," and that Plaintiff suffers from "back and foot pain associated with DDD and DJD. The allegations of pain are attributable to MDIs..." (ECF 9-1 at 77). At the hearing held before the ALJ, Plaintiff testified that he had "pain that shoots down… my back, down to my legs" associated with his type one diabetes, which the ALJ found to be a severe impairment. (ECF 9-1 at 49). The ALJ also considered Plaintiff's testimony regarding his chronic low back pain and Dr. Uhoka's diagnosis of chronic non-specific low back pain. (*Id.* at 33, 50-52).

Here, it follows from the ALJ's written decision and from the evidence considered in the record that the ALJ did in fact consider Plaintiff's pain and the symptoms associated with the alleged chronic pain syndrome. Even had the ALJ determined that chronic pain syndrome was a medically determinable impairment, the analysis would not have changed; the symptoms would remain the same, and consideration of those symptoms would not have changed. An ALJ's error is harmless "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Steven K. v. Kijakazi*, No. 3:20-cv-01655-G-BT, 2022 WL 1056920, at *8 (N.D. Tex. Jan. 19, 2022). Here, based on Plaintiff's allegations and the evidence

provided, a different administrative conclusion would not have been reached had the ALJ considered Plaintiff's alleged chronic pain syndrome as a medically determinable impairment.

### B. The ALJ did not err in finding the opinion of Jonathan Koning, M.D., unpersuasive.

Second, Plaintiff argues that the ALJ erred by finding the opinion of Jonathan Koning, M.D., unpersuasive without properly articulating the level of supportability and consistency with the record. (ECF 10 at 10-14). In evaluating claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)). Instead, the ALJ must consider five factors: 1) supportability; 2) consistency; 3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); 4) specialization; and 5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability… and consistency . . . ." *Id.* § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered

7

the other three factors. *Id.* § 404.1520c(b)(2).[4] When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.* § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.* § 404.1520c(b)(1). As a general matter, "there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). "Nor is perfection the benchmark in administrative proceedings." *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Rather, "[a]t a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Id.* (citing *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009)).

Here, Jonathan Koning, M.D., first examined Plaintiff on July 30, 2019, for complaints of lower back pain. (ECF 9-1 at 671). Dr. Koning noted that the "[s]everity of the condition is moderate," and "is aggravated by exertion." (*Id.* at 671). Plaintiff again presented to Dr. Koning in March 2021 for pain management, when Dr. Koning noted that "[s]ince last visit, [lower back pain] has become worse. . . . [s]everity of condition is mild." (*Id.* at 701). Dr. Koning continued to treat Plaintiff for lower back pain. (ECF 9-1 at 555-63, 661-723). On March 23, 2022, Dr. Koning examined Plaintiff for mild lumbar pain; Dr. Koning recommended epidural steroid injections and

---

[4] A limited exception—not discussed here—exists, where the remaining three factors must be articulated if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" *Id.* § 404.1520c(b)(3).

8

continued Plaintiff's course of treatment, which included Tramadol, NSAIDs, Flexeril, and gabapentin. (*Id.* at 712). Dr. Koning administered an interlaminar epidural steroid injection on April 21, 2022. (*Id.* at 713). Plaintiff presented to Dr. Koning again on June 15, 2022, and reported "no relief" from the injection, with pain radiating down the right hip and both legs. (*Id.* at 715). In a June 29, 2022, Treating Source Statement, Dr. Koning noted that the claimant "has chronic back pain due to DDD. Pain interferes with attention and concentration constantly." (*Id.* at 75). Dr. Koning also noted that Plaintiff could walk 100 yards, sit for two hours, and stand or walk for two hours in an eight-hour day, could lift ten pounds occasionally, and would likely need to be absent from a job for more than four days per month due to his limitations. (*Id.*). Finally, on December 14, 2022, Plaintiff returned to Dr. Koning; he noted that "[s]ince last visit, [back pain] shows no change. . . . [s]everity of condition is mild. . . [and patient] reports his pain has been increased in his lower back and right hand." (*Id.* at 663).

The ALJ in issuing his decision stated:

"I find [Dr. Koning's] opinion unpersuasive because it appears the physician relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported uncritically. Additionally, the opinion is not consistent with, as noted above, the claimant's self-reported abilities to perform a wide variety of activities and the like, nor is the opinion supported by the other evidence of record, as discussed below."

(ECF 9-1 at 32) (internal citations omitted). By contrast, the ALJ found the "opinion provided by the DDS physician persuasive, as to the claimant's ability to perform light exertional work, because the DDS physician specifically referred to the record in detail to support the assessment and the opinion is consistent with… the claimant's self-reported abilities to perform a wide variety of activities. . ." (*Id.* at 32-33).

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

9

or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The Court concludes that the ALJ sufficiently explained "supportability" when he found that Dr. Koning's opinion appeared to rely on subjective symptom reports by the Plaintiff, accepting as true what Plaintiff had to say. Additionally, the ALJ found that Dr. Koning's opinion—at least in part—was not supported by evidence in the record; as discussed below, Plaintiff's written statements as to his abilities contradicted Dr. Koning's examination notes as to Plaintiff's abilities. (ECF 9-1 at 32). Although Plaintiff correctly asserts that Dr. Koning's medical opinions are supported by his own notes, it is the duty of the ALJ to weigh the medical opinion with other evidence in the record and make a finding of fact as to the persuasiveness of the opinion. *See Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *9 (N.D. Tex. May 19, 2021), *report and recommendation adopted*, No. 4:20-CV-372-A, 2021 WL 2291738 (N.D. Tex. June 4, 2021); *see also* 20 C.F.R. § 404.1545(a)(3) (requiring an ALJ to consider medical opinions together with the rest of the relevant evidence in the record); *Collie v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021) (noting that the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion"). Finally, the ALJ found that Dr. McCary, a state agency medical consultant, was "uniquely qualified to give opinions regarding the claimant's functional ability." (ECF 9-1 at 32). Dr. McCary's medical findings contradicted those of Dr. Koning's, and Dr. McCary noted in his report that Dr. Koning's "medical opinion contrasts with the other evidence in the record. . . . [and] is without substantial support from the medical source who made it, which renders it less persuasive." (*Id.* at 75). The assessment of a state agency physician may properly constitute substantial evidence in support of an ALJ's finding. *See, e.g., Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006); *Kinser v. Colvin*,

No. 5:13-CV-264-C, 2014 WL 6973022, at *3 (N.D. Tex. 2014); *Brown v. Astrue*, No. 3:08-CV-0255-D, 2009 WL 64117, at *4 (N.D. Tex. 2009).

Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The Court concludes that the ALJ sufficiently explained "consistency" when he noted that Dr. Koning's opinion is inconsistent with "the claimant's self-reported abilities to perform a wide variety of activities and the like." (ECF 9-1 at 32). For example, the ALJ notes that the claimant reported—and Dr. Koning incorporated into his opinion— that he has "difficulty standing, sitting, walking, lifting, using his hands, and performing postural movements. . . [and] lies in bed four to five days per month," but Plaintiff also reported his ability to "perform household chores, take out the trash, drive, do laundry, cook/prepare simple meals, play board games, shop in stores, go to the fair/festival, go camping, care for pets, shower, dress himself, perform physical therapy exercises, run errands, go out alone, dine out, and do household repairs." (*Id.* at 32). Plaintiff asserts that this is insufficient, because he has claimed at other times that he is unable to do many of these activities. (ECF 10 at 12). Using laundry as an example, Plaintiff argues in his opening brief that he "can only assist with laundry, as his wife does the majority of it." (*Id.*). However, in a form completed on September 23, 2021, Plaintiff stated that he is able to do "light cleaning and loading and unloading washer and dryer. Wife has to bring cloths [sic] to and from laundry." (ECF 9-1 at 295). In another form dated February 14, 2022, Plaintiff stated that he is able to do "light cleaning, laundry, [and] small household repairs." (*Id.* at 316).

It is the responsibility of the factfinder to weigh the evidence and make a determination as to the persuasiveness of a particular medical opinion. *See Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *9 (N.D. Tex. May 19, 2021), *report and recommendation adopted*, No. 4:20-CV-372-A, 2021 WL 2291738 (N.D. Tex. June 4, 2021); *see also* 20 C.F.R. § 404.1545(a)(3); *Collie v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). When contradictory evidence exists in the record, it is the duty of the factfinder to consider the entirety of the record together to make a finding on credibility. As stated above, this Court is not engaged in *de novo* review of the ALJ's decision; rather, review is limited to whether the Commissioner applied the correct legal standards, and whether his decision is supported by substantial evidence in the record as a whole. *See* discussion *supra* Section II. "A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision." *Turner-Lewis v.* Saul, No. 4:20-CV-372-A, 2021 WL 2302770 (N.D. Tex. May 19, 2021); *see Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) ("The court may not reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner].").

### C. The ALJ properly relied on the testimony of the vocational expert to find plaintiff capable of certain jobs at step five.

Finally, Plaintiff argues that the ALJ erred by finding the Plaintiff capable of jobs at step five that exceed the manipulative limitations of the RFC. (ECF 10 at 14). Plaintiff asserts that "[t]he ALJ did not provide a sufficient explanation for the conflict between the vocational expert's testimony and the DOT/SCO." (*Id.* at 16). Vocational expert ("VE") Jerold Hildre testified at the hearing in the instant case. (ECF 9-1 at 54). In exploring available work in the national economy, the ALJ asked Mr. Hildre to assume an individual of the same age, education, and work experience as the Plaintiff, who has the RFC for: lifting, pushing, pulling, and carrying twenty pounds

12

occasionally and ten pounds frequently; can stand and walk for a total of six hours in an eight-hour workday; sit six hours in an eight-hour workday; who is limited to handling and fingering occasionally with the right hand, with feel limitations occasionally on the right; who may climb ramps and stairs occasionally and balance, stoop, crouch, and crawl occasionally; who must never climb ladders, ropes or scaffolds; and who must never work at unprotected heights or with moving mechanical parts. (*Id.* at 54-55). In response, the VE testified that jobs do exist that can accommodate those limitations, including as a ticket taker, parking lot cashier, and agricultural sorter. (*Id.* at 55-56). The ALJ further inquired as to why Plaintiff's limited use of one hand would not preclude these occupations, which may have to do "more than occasional handling and kind of a lot of fingering and feeling." (*Id.* at 56). The VE testified that his opinion was based on his "experience and training. Some jobs require, of course, like assembly, using both hands and fingers and that's a frequent level. However, there are many that only require occasional, like say for example either reaching, or fingering, or handling." (*Id.* at 56-57). Plaintiff's counsel further asked the VE whether changing the hypothetical to reflect an individual whose use of his right upper extremity was limited to less than occasional would affect his analysis. (*Id.* at 58). In response, the VE testified that "you could almost do those jobs if you're one armed. The sorter, I might… just go ahead and eliminate that sorter. . . . But others, you could… do that job with one arm." (*Id.*).

In his written determination, the ALJ stated:

> "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Department of Labor Bureau of Labor Statistics and DOT, including its companion publication, the Selected Characteristics of Occupations defined in the Revised DOT (SCO) except as it relates to right- and left-hand manipulation (e.g., handling, fingering, and feeling), which are not addressed in the DOT, but are instead based on the vocational expert's professional knowledge and experience and of the pertinent job markets and is accepted."

(ECF 9-1 at 36).

SSR 00-4p clarifies the Social Security Administration's standards for considering the testimony of VEs. *See* SSR 00-4p, 2000 WL 1898704. When testimony provided by a VE conflicts with information provided in the Dictionary of Occupational Titles ("DOT"), the ALJ is required to "[i]dentify and obtain a reasonable explanation for any conflicts. . . . [and] [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id.* at *1. SSR 00-4p notes that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE… may be able to provide more specific information about jobs or occupations than the DOT." *Id.* at *3. "[T]he ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). An ALJ may permissibly rely on a VE's testimony where it was based on professional knowledge and experience. *See Clement v. Kijakazi*, 2022 WL 19073969, at *11 (E.D. La. Oct. 6, 2022) (finding that, where a VE's testimony conflicted with the DOT, the ALJ did not err in relying on the VE's opinion when the VE based her opinion on "professional knowledge, experience, training, and education").

Here, the ALJ noted the conflict between the VE's testimony and the DOT and obtained a reasonable explanation for the conflict: the VE's professional knowledge and experience of the pertinent job markets. (ECF 9-1 at 36). In his testimony, the VE noted that, based on his professional experience, while some jobs require frequent use of both hands and arms, some jobs—including ticket taker and parking lot cashier—could be performed with only one arm, and do not require frequent use of both hands and arms. (ECF 9-1 at 56-57). The ALJ complied with the process laid out in SSR 00-4p; he identified a conflict between the VE's testimony and the DOT, then asked for a "reasonable explanation" for that conflict. SSR 00-4p, 2000 WL 1898704. The

14

VE testified that his opinion was based on professional knowledge and experience. (ECF 9-1 at 36). The ALJ accepted this explanation for the conflict and relied on the VE's testimony as to which jobs Plaintiff is capable of performing. *Id.*; *see Clement v. Kijakazi*, 2022 WL 19073969, at *11 (E.D. La. Oct. 6, 2022). Therefore, the Court finds that the ALJ did not err in relying on the VE's testimony to determine which jobs Plaintiff was capable of performing.

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

ENTERED February 22, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE